WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  )<br>  )<br>      Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>Marc Shipley,  )<br>  )<br>      Defendant.  )<br>_____) | No. CR 05-962-58-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is the Motion for Release of Property to Third Party (Doc. 1790) filed by Defendant Marc Shipley ("Shipley"). The Court ordered:

> The government shall file a response to the Motion for Release of Property to Third Party (Doc. 1790) on or before September 23, 2024. If he so chooses, Shipley may file a reply within 14 days of receipt of the response.

August 21, 2024, Order (Doc. 1791, p. 1). The government has filed a response (Doc. 1793). Shipley has not filed a reply.

*Factual and Procedural History*

Shipley pleaded guilty to conspiracy to commit bribery and extortion, in violation of 18 U.S.C. § 371, in October 2007. During the subsequent sentencing, the Court adopted the offense conduct set forth in the pre-sentence report ("PSR"). The PSR summarizes, *inter alia*, as follows:

> 5. . . . During the course of a two-year FBI "sting" operation . . ., nearly 70 public officials employed in Southern Arizona were implicated in the transportation of over 500 kilograms of cocaine on approximately 20 occasions between

|   |   |   |
|---|---|---|
| 1 | | February 2002 to March 2004. |
| 2 | 6. | During the deliveries, these officials wore their official uniforms, carried their government identification and drove government vehicles to avoid traffic stops and/or searches at highway checkpoints. All believed they were working for a narcotics trafficking organization ("the Organization"). The deliveries were documented on videotape. Altogether these officials accepted over $250,000 in cash in exchange for abusing their official position to facilitate the activities of the Organization. |
| | | * * * * * |
| | 42. | [In October 2002,] Mark Ryan Shipley, a civilian falsely presenting himself as an [Arizona Army National Guard ("AANG")] specialist, also met with purported drug traffickers and offered to transport narcotics for the organization, stating he had been involved in narcotics trafficking in the past. |
| | 43. | [On October 16, 2022, other named individuals,] Mark Ryan Shipley and one unidentified official transported a total of 60 kilograms of cocaine from Tucson to Las Vegas, Nevada. Thereafter, . . . Mark Ryan Shipley [] accepted $3,000. |
| | | * * * * * |
| | 72. | To a large degree, the relative culpability of the various conspirators can be assessed based on the amount of bribe money each accepted, which in turn reflects how many deliveries they participated in and whether they recruited other public officials. Under this analysis, the defendants generally fall into one of four groups: |
| | | • Group I - Defendants who participated in only one delivery. The 25 individuals in this category took bribe money ranging from $1,500 to $5,000. |
| | | * * * * * |
| | | **SHIPLEY, Mark Ryan (057)** (sic) - Pleaded guilty to a one-count information charging conspiracy (bribery and extortion). . . . A civilian falsely purporting to be an AANG specialist. Participated in the delivery of a total of 60 kilograms of cocaine on one occasion, October 16, 2002, and accepted $3,000. |

PSR, ¶¶ 5-6, 42-43, 72-73.

The Court found the PSR had accurately calculated the advisory sentencing guideline – a base offense level of 35 based on "the quantity of cocaine involved, a three level adjustment for acceptance of responsibility, for a total offense level of 33, and a criminal history category of four, which is based on the . . . criminal history[.]" Transcript 3/23/2008 Sentencing, pp. 4-5. The Court summarized the criminal history, including offenses

committed as a juvenile and as an adult. Further, the Court stated the criminal history was serious and lengthy, including "[s]everal instances involv[ing] firearms" and "[s]everal instances involv[ing] extreme -- yes, extreme violence towards either girls, or women." *Id*. Shipley was sentenced to a 24 month term of imprisonment, to be followed by 36 months of supervised release.

On January 31, 2018, Shipley was convicted of three counts of being a felon in possession of firearms/ammunition in violation of 18 U.S.C. § 922(g) in CR 16-1061-TUC-DCB. On May 2, 2018, Shipley was sentenced to 96 months' imprisonment, to be followed by 36 months of supervised release. Shipley remains on supervised release for that offense.

The government asserts Shipley is also the subject of an Arizona protective order.

On July 10, 2024, Shipley filed his Motion for Release of Property to Third Party (Doc. 1790). Shipley seeks the transfer of a Ruger P89 firearm, magazine(s), and holster to third-party Alicia Valenzuela ("Valenzuela"). Shipley asserts Valenzuela is a longtime friend of his and he has delegated her to receive the property and "to make necessary arrangements to sell said firearm on behalf of [Shipley]." Motion (Doc. 1790, pp. 1-2).

*Fed.R.Crim.P. 41(g)*

The applicable rule provides:

> (g) MOTION TO RETURN PROPERTY. *A person aggrieved* by an unlawful search and seizure of property or *by the deprivation of property may move for the property's return*. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed.R.Crim.P. 41(g), *emphasis added*. Indeed, this Court has jurisdiction "to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant." *United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987).

"Generally, a [Rule 41(g)] motion is properly denied 'if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture

- 3 -

or the government's need for the property as evidence continues.'" *United States v. Fitzen*, 80 F.3d 387, 388 (9th Cir. 1996), *citations omitted*. The Ninth Circuit has stated:

> [T]he Advisory Committee Notes . . . provide that "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property." The United States' retention of the property generally is reasonable if it has a need for the property in an investigation or prosecution. However, "if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." Advisory Committee Notes to the 1989 Amendment of [Rule 41(g)].

*Ramsden v. United States*, 2 F.3d 322 (9th Cir. 1993). It has not been shown the government has a need for retention of the property.

However, the government asserts legitimate interests to retain the property exist because Shipley has not shown the transfer of the firearm to third-party Valenzuela would "prevent him from later exercising control over the firearm." Response (Doc. 1793, p. 3); *see also Henderson v. United States*, 575 U.S. 622, 626 (2015) (18 U.S.C. § 922(g) "prevents a court from instructing an agency to return guns in its custody to a felon-owner like [Shipley], because that would place him in violation of the law"). In his Motion, Shipley merely states Valenzuela is a longtime friend. The government's response advised Shipley of the need for assurances that the transfer of the weapon will not result in him later exercising control over the firearm. The Supreme Court has stated:

> [A] court facing a motion like [Shipley's] may approve the transfer of guns consistently with § 922(g) if, but only if, that disposition prevents the felon from later exercising control over those weapons, so that he could either use them or tell someone else how to do so. One way to ensure that result, as the Government notes, is to order that the guns be turned over to a firearms dealer, himself independent of the felon's control, for subsequent sale on the open market. *See, e.g., United States v. Zaleski*, 686 F.3d 90, 92–94 (C.A.2 2012). . . . A court may also grant a felon's request to transfer his guns to a person who expects to maintain custody of them, so long as the recipient will not allow the felon to exert any influence over their use. In considering such a motion, the court may properly seek certain assurances: for example, it may ask the proposed transferee to promise to keep the guns away from the felon, and to acknowledge that allowing him to use them would aid and abet a § 922(g) violation. *See id.*, at 94; *United States v. Miller*, 588 F.3d 418, 420 (C.A.7 2009). Even such a pledge, of course, might fail to provide an adequate safeguard, and a court should then disapprove the transfer. *See, e.g., State v. Fadness*, 363 Mont. 322, 341–342, 268 P.3d 17, 30 (2012) (upholding a trial court's finding that the assurances given by a felon's parents were not credible). But when a court is satisfied that a felon will not retain control over his guns, § 922(g) does not apply, and the court has equitable power to accommodate the felon's request.

*Henderson*, 575 U.S. at 630–31. Although Shipley was given an opportunity to file a reply and provide assurances that the return of the property would not leave him in effective control of the firearm and related items, Shipley has not provided such assurances. For example, Shipley could have provided a declaration from Valenzuela regarding steps she intends to take to sale the property or a proposed sale already arranged.

Moreover, Shipley's history does not provide any assurance Shipley will not ultimately end up controlling the firearm. Shipley is a repeat offender, has been convicted on three counts of being a felon in possession of firearms/ammunition, and has attempted to enlist the help of another person to conceal firearms from federal investigators. *See* CR 16-1601 PSR (Doc. 280, § 8). Shipley has not provided any assurances that his longtime female friend would not forfeit control of the firearm.

The Court finds it has not been established that the transfer of the property would not result in Shipley exercising control over the property.

Accordingly, IT IS ORDERED:

1. The Motion for Release of Property to Third Party (Doc. 1790) is DENIED.

2. The Clerk of Court shall provide a copy of this Order to:

Marc R Shipley
4510 N. La Cholla Blvd Unit #11
Tucson, AZ  85705

DATED this 28th day of October, 2024.

_____
Cindy K. Jorgenson
United States District Judge